UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No. CR-07-0268 (PLF) |
| : | |
| DONNAY A. DAVIS, : | |
| : | |
| Defendant. : | |
| : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing. For the reasons set forth herein, the government respectfully recommends that the Court sentence the defendant to a split sentence of sixteen months, to be served with eight months of incarceration followed by eight months of home detention to be served during three years of supervised release.

I.   **BACKGROUND**

On October 25, 2007, defendant Donnay Davis pled guilty to a one-count information that charged him with Attempted Bank Fraud, 18 U.S.C. §1344. During his plea colloquy, the defendant admitted that at all times material to his offenses that he was employed as a uniformed patrol officer with the Metropolitan Police Department, and that on August 27, 2007 he entered the home of R.B.C. to investigate a burglary call and stole a credit card belonging to R.B.C. that was issued by Chase Bank, an interstate bank that is federally insured. The defendant thereafter contacted the credit card company to activate the card, but he discovered that he needed R.B.C.'s date of birth and social security number. The defendant then had another MPD officer access the Washington Area Law Enforcement System ("W.A.L.E.S."), which an electronic database, searchable by name, that can provide a persons's social security number and date of birth, to

obtain information on R.B.C. The law enforcement database is password protected and authorized for use only by law enforcement personnel who are engaged in legitimate law enforcement activities. After obtaining private information on R.B.C., the defendant contacted the credit card company, activated the card, and created a secret pin number. While still on duty, the defendant went to Union Station, in the District of Columbia and attempted, twice, to withdraw money using the credit card and new secret pin number he created. In total, the defendant attempted to obtain $1,400 from the ATM machine using R.B.C.'s credit card. Both efforts failed. Approximately 5 hours later the defendant drove to an ATM location off Silver Hill Road in District Heights, Maryland. The defendant attempted to withdraw $300 from an ATM machine located at that location using R.B.C.'s credit card and the pin number he created. The defendant failed to obtain any money from the ATM. After failing on these three occasions, the defendant threw R.B.C.'s credit card outside his car window onto the street.

      As stated in the Statement of Offense, the defendant was caught on camera committing the last act in Maryland. The camera images show that the defendant, before attempting to withdraw money on the ATM, cased the location and attempted to hide himself from the video camera in the ATM. The ATM camera captured the defendant casing the location. When the defendant attempted to take money from the ATM using R.B.C.'s credit card, he also attempted to hide his appearance from the ATM camera by using a visor in his vehicle, but he was unsuccessful. If permitted by the Court, the government can present these digital images at sentencing.

**II.    SENTENCING FACTORS**

      Title 18, United States Code, Section 3553(a), provides numerous factors that the Court

shall consider in sentencing a defendant. These factors are discussed below, numbered as they are in Section 3553(a).

    A. **The Court should consider the nature and circumstances of the offense**. Here, the defendant abused his position of trust as a police officer and committed a number of separate criminal acts in succession. He first abused his trust to obtain access to R.B.C.'s home, and steal the credit card (burglary/theft). After taking the card, he then called the MPD Dispatch and advised them that no crime had occurred (false statements). After he realized the security features on the card would prevent him from carrying out his next crime (using the card to steal from the bank) he committed another abuse of his position by having another officer accesses and provide to him R.B.C.'s personal and private identification information from W.A.L.E.S. (false statements, identity theft, and computer crime). After obtaining the information, he again contacted the credit card company, pretended to be R.B.C., and activated the card with a unique pin number so that he could withdraw money on the card (aggravated identity theft). After that point he traveled to Union Station and used the card in an attempt to access money from the ATM (bank fraud). When that failed (twice) he did not end his criminal activity. Instead the defendant called the credit card company several more times (pretending to by R.B.C.) to confirm that the card was active, and still had approximately $6,000 available in credit (identity theft). Later that evening, the defendant attempted a third time to use the card in Maryland (bank fraud). After the defendant failed the third time, he threw the card away out of his window in the car (littering/destruction of property).[1]

---

[1] Sometime after the defendant threw the still active card out of his car window, another person apparently found the card and attempted to use the card to buy gas, but was unsuccessful.

The defendant's conduct here was deliberate and has the significant potential to undermine the citizenry's trust in the police force that is sworn to protect them. The defendant, acting in his official capacity, gained access to a District resident's home in response to a call for a burglary, and finding no crime, he decided to commit one. This conduct is abhorrent and is a violation of a police officer's most fundamental duty to protect the citizenry. It is no wonder that R.B.C. felt similarly violated by the defendant's actions. See Attachment 1, Victim Impact Statement ("V.I.S.") at 2. Importantly, if citizens begin to fear that the police will criminalize them if the call for help, then they will simply stop calling the police, and increasingly take matters into their own hands.

The deliberateness of the defendant's actions is also a relevant consideration. The defendant carefully tried to hide his appearance at the last ATM location, and despite having numerous opportunities along the way to desist from this criminal activity, he chose to continue his crimes at every stage. This defendant's crime was also not a mistake or isolated act of picking up loose cash of questionable origin- he intentionally committed these crimes knowing the serious risks to himself and the entire police department if he was caught. Knowing these risks he still committed these crimes, and it is now only fair to hold him to the bargain he knew he was making.

The Court should also consider the history and characteristics of the defendant. As discussed below and in the Presentence Report ("PSR"), prior to committing the offenses the defendant appears to have been otherwise upstanding person who had never been arrested, not used drugs, and had strong family ties. See PSR ¶¶ 30- 39.

(B) **The Court should also consider the need for the sentence imposed (1) to reflect**

**the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence; (3) to protect the pubic; and (4) to provide defendant with appropriate education or vocational training**.  In this matter, the offense was serious and requires adequate punishment.  The defendant's conduct has already caused serious harm to the public standing of officers of the Metropolitan Police Department, and if the defendant is not properly punished, the citizenry will believe that police officers can steal from them with near impunity.  Sentencing the defendant to an adequate period of incarceration will also serve as a significant general deterrent.  Future police officers facing economic hardship may be tempted – as the defendant was– to commit crime, and it is important for them to recognize that they will face harsh penalties if they are caught committing crime.  The government does not believe that the defendant is a violent offender, but believes that his punishment should match the seriousness of his criminal conduct.

Other important factors include the victim's position regarding sentencing.  R.B.C. has stated that she felt violated by the defendant's actions, that she has received an apology from the defendant and now asks that he be sentenced to probation.  See VIS at 2.  The defendant also could gain further educational skills (college) or vocational training as a condition of supervised release.

(C) **The Court should consider the kinds of sentences available**.  The defendant pled guilty to one count of Attempted Bank Fraud, in violation of Title 18, United States Code, Section 1344.  The maximum sentence for Attempted Bank Fraud is thirty years imprisonment, a fine of $1,000,000, or a fine of twice the pecuniary gain or loss pursuant to 18 U.S.C. § 3571(d), a $100 special assessment, and a three-year term of supervised release.  He is not be eligible for

straight probation. See PSR ¶ 51, 58.

(D)  **The Court should also consider the sentencing range established by the United States Sentencing Guidelines ("USSG")**.  As to these guidelines, the probation officer believes, and the Government concurs entirely, that the defendant's resulting Total Adjusted Offense Level for the offense is 12, that his calculated Criminal History category is I, and that his guideline range would be in Zone C, which can only satisfied by incarceration or a split sentence. See id.

(E) **The Court should consider any pertinent policy statement issued by the Sentencing Commission**.  As discussed above, the government concurs with the guideline calculation in this case, and sees no reason for departure or variance. The government believes that the fact that the defendant was a police officer who abused his position of trust is not an independent reason to depart from the applicable guideline range (which already adds levels due to abuse of a position of trust), rather they are relevant facts in deciding what the defendant's sentence should be within the established guideline range.

(F)  **Moreover, the Court should consider the need to avoid unwarranted sentencing disparities among defendants with similar records**.  Here, a sentence within the guidelines would help prevent such disparities between the defendant and similarly situated defendants.

(G) **Lastly, the Court should consider the need to provide restitution**.  In this matter, restitution is not at issue, as there is no actual loss to be repaid.


**III.** **SENTENCING GUIDELINE CALCULATIONS**

The United States fully concurs with the PSR's conclusion about the applicable

Guideline provisions in this case. As stated above, the United States believes that the defendant's federal guideline calculation is level 12, criminal history category I. The sentencing range for the defendant is 10 to 16 months incarceration, with the availability of a split sentence (Zone C).

### III.    CONCLUSION

The Government believes the defendant is deserving of a significant term of combined incarceration and home-confinement. This was not a case of isolated misconduct and breach of trust: the defendant, a sworn and armed police officer, made numerous independent criminal actions over several hours, and he also made significant efforts to hide his criminal activity (such as telling the MPD dispatch that no break-in had occurred, casing the last ATM location in Maryland, and attempting to hide his face during the transaction). Given that the defendant had been a police officer for approximately three years prior to this incident, it is also clear that he knew what he was risking in committing these crime, but he did them anyway. The government believes in light of the defendant's serious misconduct and grave breach of public trust, this Court should sentence the defendant to 16 months, that being the high end of the applicable guideline range. However, the government also believes that there is ample reason why this Court should sentence the defendant to a split term of incarceration and home confinement.

First, the defendant cooperated and admitted his guilt – voluntarily – almost immediately after realizing that an arrest warrant had been issued for him in this case. The defendant further cooperated when he agreed, as part of his guilty plea, to resign from the Metropolitan Police Department. Second, it is likely that the defendant's term of incarceration will be spent in solitary confinement or in protective custody (due to his status a former police officer). Third,

prior to the criminal activity in this case, it appears the defendant had no prior arrests and lived a positive, drug-free life.  Fourth, the defendant's education and positive family contacts strongly suggest that he is an attractive candidate for home monitoring which would improve what the government believes is an already strong likelihood of rehabilitation in this case.  It is for similar reasons that the victim has requested leniency for the defendant.  See VIS at 2.  Lastly, the government believes the goals of general deterrence will be served by showing some leniency because the defendant did not actually receive any proceeds from this criminal activity (for example, this Court could sentence a similarly situated defendant who actually obtained money and lost it gambling – causing economic injury to a victim – to a full term of incarceration).

Taking into account all of these factors, the Government believes that the defendant should be sentenced to a split term of incarceration and home-confinement for a period of 16 months, with the home-confinement portion of the defendant's sentence to be served during the initial portion of a three year term of supervised release.  The government also asks that this Court require the defendant to perform at least fifty hours of community service as a condition of his supervised release.

                       Respectfully submitted,

                       JEFFREY A. TAYLOR
                       UNITED STATES ATTORNEY


                       _____/s/_____
                       TEJPAL S. CHAWLA
                       Assistant United States Attorney
                       Fraud & Public Corruption Section
                       555 4th Street, N.W.
                       Washington, D.C. 20530
                       (202) 353-2442

**VICTIM IMPACT STATEMENT**
**FRAUD AND PUBLIC CORRUPTION**
*Received via email on December 28, 2007*


**Please complete the following**:

Your Name: Roslyn Boone-Chaplin

Defendant's Name: Officer Donnay Davis

Case #: _____

Relationship: None

Sentencing Date: January 8, 2008

To the Honorable Paul Friedman _____: Judge's Name


*If you do not wish to make a statement regarding this offense, please sign and date here and send us this form in the self addressed, stamped envelope.*


_____        _____
**Signature**                                                    **Date**



{You can use this form as a guide or write your statement in letter form to the Judge. Please include the identifying information listed above. Consider the following:}


How has this crime affected you and those close to you?

Thanks to the alertness of Chase bank credit card services and their denial of the transaction; the crime did not affect me or my family in any way.


Has this crime affected your ability to perform your work, make a living, run a household, go to school, or enjoy any other activities you previously performed or enjoyed; if so, how?

NO

If you wish, you may use this space to tell the Judge whatever you would like him/her to know about how it is to be a victim of a crime; or any other information you would like to share.

When the crime first occurred, I felt violated and let down by the DC Metropolitan Police Department, because one of their officer's responded to a burglar alarm at my home. His job was to make sure my home was safe and secure for me and my family to enter. Instead, he removed personal property from my home for his own personal benefit.

Do you have any reactions, feelings toward the criminal justice system; if so, explain?

NO

Do you have a recommendation for sentencing?

I had the opportunity to meet Officer Davis at his last hearing in October 2007. Officer Davis was very apologetic and sincerely sorry for his actions. We also had a brief conversation about his character, beliefs, and values which were also mentioned during his hearing.

I do not believe that the crime officer Davis committed represented the true and loyal father, officer, son, and husband he that he is in any way. I believe that officer Davis was going through a financial crisis, in which he allowed temptation to take residency in his emotions. Temptation does knock at all of our doors, and it takes strength, power, and faith in God not to yield to temptation.

The fact that Officer Davis was forced to resigned from the DC Metropolitan Police Department, and has jeopardized his professional career, the humiliation that he brought upon himself, his family and the disappointment of his fellow officers, is sufficient punishment with in itself for the crime he has committed.

It is my sincere prayer and recommendation that Officer Davis will not be sentenced to the ten to sixteen months that he faces.

**FINANCIAL IMPACT**:

We know this extremely stressful period of your life cannot be compensated monetarily, however, you may want the Judge to know what costs you have incurred for restitution purposes. Please provide any documentation/verification of those losses in forms of receipts, cancelled checks, insurance claims, etc.

A. **Monetary Loss**:

    1. Value of property lost or destroyed (list items)....................._____

        _____

        _____

    2. Lost income or wages............................................................._____

    3. Miscellaneous expenses (childcare, transportation to court)..._____

        _____

**TOTAL LOSS**................................................................................._____

B.    **Reimbursement received by collateral private sources:**

    1. Insurance (contact info, name of insurance co.)....................._____

    2. Reimbursed Income or Wages..............................................._____

    3. Other (list source and amount, ie Crime Victims Compensation)...._____

**TOTAL REIMBURSEMENT**................................................................._____

_____        _____
**Signature**                                            **Date**