**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**

      **v.**

                                **Docket No. 07-CR-00268-01**

**DONNAY DAVIS**

                                **(PLF)**

      **Defendant.**

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Donnay Davis, by and through undersigned counsel, respectfully submits this memorandum in aid of sentencing:

**I.**     **INTRODUCTION**

Donnay Davis stands before the court having entered a pre-indictment plea to a single count of Attempted Bank Fraud pursuant to 18 U.S.C.§ 1344. The charge herein arises out of the performance of Mr. Davis' duties as a four year veteran of the Metropolitan Police Department. As part of the plea agreement in this case Mr. Davis has tendered his resignation from the Department.

The **Pre-Sentence Investigation Report** herein concludes that the total offense level is 12 with a criminal history category of I making the Guideline sentencing range a period of incarceration of 10 to 16 months. As the above referenced guideline sentence falls in Zone C of the Guideline sentencing provisions, the guideline sentence may be satisfied by (1) a sentence of imprisonment;  or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community

**1**

confinement or home detention, provided that at least one half of the minimum term is satisfied by imprisonment. Id.§ 5C1.1(d ).

The Defendant herein understands that the offense conduct herein is inexcusable and a betrayal not only of the public trust and his oath as a police officer but violative of the value system he has inherited from his family. He will not seek to minimize the seriousness of that conduct but instead offer background  and context to his behavior in the hope that this Court will consider that in choosing the appropriate sanction. This case presents some unusual circumstances many of which have been alluded to at the end of the Government's Memorandum in Aid of Sentencing.

At the time of the entry of the guilty plea in this case the victim of Defendant's conduct came to the hearing and had a lengthy conversation with Mr. Davis who apologized to her and offered some explanation for his conduct. Much of that information is attached hereto as exhibit 1( Defendant's letter to the Court). As a result of that contact the complainant in her victim's impact statement has forgiven Mr. Davis and in fact lobbies for leniency.

The Defendant asserts that the facts in this case warrant a downward departure pursuant to U.S.S.G. § 5K2.20 for aberrant behavior and will ask the Court to impose a sentence  of a duration that would allow the Defendant to serve the punitive portion of his sentence in home detention. In the alternative Defendant asserts that the facts in this case warrant a variance pursuant to United States v. Booker, 543 U.S. 220, (2005) and 18 U.S.C.A. § 3553(a) and will ask the court to impose a sentence of a duration that

2

would allow the Defendant to serve  the punitive portion in home detention. The

Defendant also argues that a sentence within the Guideline Range recommended by the

"PSR" would not be reasonable when the "*Factors to be Considered in Imposing a*

*Sentence"* set forth in 18 U.S.C.A § 3553(a) are considered.

This Memorandum will address these issues and outline additional mitigating

facts to be considered by the Court.

## II.    STATEMENT OF FACTS

As part of the plea agreement, the parties did stipulate to a **STATEMENT OF**

**THE OFFENSE** that is accurately outlined in the offense conduct section of the

pre- sentencing investigation report that the Defendant adopts as if fully restated

herein.

## III.    ARGUMENT

### A.    Defendant Is Entitled To A Downward Departure Pursuant U.S.S.G. § 5K2.20 For Aberrant Behavior.

The Court may depart downward based on aberrant behavior if several specific

criteria are present. All are present in this case. U.S.S.G. § 5K2.20 list those criteria as:

The defendant committed a single criminal occurrence or single criminal

transaction that (1) was committed without significant planning; (2) was of limited

duration; and (3) represents a marked deviation by the defendant from an otherwise

law abiding life.

A line of Seventh Circuit cases that illuminate the above criteria are referred to in

the case of  U.S. v. Bradley, 196 F.3d 762 (7th Cir. 1999). It stated:

**3**

We have previously recognized that if a criminal act constitutes a single instance of aberrant behavior, a defendant may receive a downward departure under the United States Sentencing Guidelines. *See* United States v. Partee, 31 F.3d 529, 533 (7th Cir.1994); United States v. Andruska, 964 F. 2d 640, 646 (7th Cir. 1992); United States v. Carey, 895 F.2d 318, 325 (7th Cir. 1990). For conduct to qualify as "aberrant behavior," it must be "more than merely something 'out of character' or the defendant's first offense." Carey, 895 F.2d at 325. Rather, the criminal conduct must be something in the nature of a spontaneous, sudden, or unplanned act. Partee, 31 F.3d at 534; Andruska, 964 F.2d at 646.

The District of Columbia Circuit outlined it's adoption of the Seventh Circuit approach in Dyce v. United States, 91 F.3d 1462,(D.C. Cir. 1996) when it stated " We share the view of the Fifth and Seventh Circuits; the Ninth Circuit's approach would have the effect of converting any first crime into an aberration.

Each of the above listed criteria are present where as here an exemplary police officer with numerous commendations, in an unplanned act during an investigation into a burglary alarm stumbled upon a new credit card on a table in that apartment. Defendant failed to resist a temptation of a type officers are faced with throughout their careers. The public has a right to expect that all of its public servants resist such temptations and a failure to live up to that standard by the Defendant even for a moment caused more harm than Mr. Davis could have imagined.

This lapse in judgment and self control has caused the Defendant to forfeit a career that he loved and excelled at  along with his retirement pension, the right to vote and other benefits he depended on. The spontaneous circumstances of the offense, the timing of the family financial pressures he faced, the severity of the guideline range

**4**

for this type of conduct generally despite an early plea and acceptance of responsibility,

coupled with the security issues created by incarcerating a law enforcement officer

combine to render such a sentence particularly harsh and in this case an extraordinary

circumstance warranting a downward departure for aberrant behavior.

There is further illuminating language about the Sentencing Commission's

intent in enacting § 5K2.20 departures to be found in U.S. v. Guerrero, 333 F.3d 1078

( 9th Cir. 2003) stating " the sentencing court must conduct two separate and

independent inquiries, both of which the defendant must satisfy before a departure

can be granted. That is, the court must determine whether the defendant's case is

extraordinary and whether his or her conduct constituted aberrant behavior." United

States v. Castano-Vasquez, 266 F.3d 228, 235 (3d Cir. 2001); see also, United States

v. Jiminez, 282 F.3d 597, 602 (8th Cir. 2002).

Defendant submits that both thresholds are met by the instant facts and thus

it would be appropriate for the Court to grant the aberrant behavior downward departure

sought herein as the guidelines as applicable to the charges herein do not adequately

contemplate all of the circumstances present in this case.

      **B.**        **If The Court Does Not Apply U.S.S.G. § 5K2.20, The Guideline Sentence Set Forth In The Pre-Sentence Investigation Report Would Not Be Reasonable After Consideration Of The Factors To Be Considered In Imposing A Sentence Under 18 U.S.C. 3553.**

As a result of the Supreme Court's ruling in Booker v. United States, 542 U.S.

220(2005), the United States Sentencing Guidelines are no longer mandatory but are

5

rather one factor to be considered in determining a reasonable sentence in a criminal

case. The 180 degree change in the use of the sentencing guidelines mandated by

Booker have already been developed further in this Circuit, expressed most clearly

by Judge Henderson in her concurring opinion in United States v. Price, 409 F.3d 436

(D.C. Cir., 2005), in which she observed that :

> The district court's duty to consult the Guidelines is,
> however, quite different from the previous duty to apply them
> mandatorily. Now, in setting a particular sentence, the district
> court must "take account of the Guidelines together with other
> sentencing goals." (Citation to Booker omitted). This means
> that the district court *must* consider the criteria set forth in
> *section 3553(a)*, including the Guidelines sentencing range
> established for "the applicable category of offense committed
> by the applicable category of defendant" as well as policy
> statements of the Sentencing Commission. [citations omitted]…
> **What the practical difference between the duty to consult**
> **the Guidelines and the duty to apply them means under the**
> **"reasonableness" standard of review will emerge only on a**
> **case-by-case basis.** But it is clear that the duty to consult the
> Guidelines neither reduces them to "a body of casual advice, to
> be consulted or overlooked at the whim of a sentencing judge."
> United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005), nor
> maintains de facto the mandatory sentencing regime declared
> unconstitutional in Booker,…"

United States v. Price, supra at 446 (concurring opinion of Karen L. Henderson,

Circuit Judge. (Emphasis added).

The Court succinctly paraphrased those § 3553(a) *"factors to be considered in*

*imposing a sentence"* to include, but not limited to, the following:

[1]     The nature of the offense;

[2]     The Defendant's history;

**6**

[3]    The need for the sentence to promote adequate deterrence;

[4]    [The need] to provide the Defendant with needed educational
       or vocational training;

[5]    Any pertinent policy statements issued by the Sentencing
       Commission;

[6]    The need to avoid unwarranted sentencing disparities among
       similarly situated Defendants;

[7]    The need to provide restitution to any victims.

Id. at 442.

An examination of those factors in light of the facts of this case and the

circumstances described in Part III(A) of this Memorandum, demonstrate that the

guideline sentence of 10 to 16 months incarceration would not result in a reasonable

sentence when applied to this Defendant.

Defendant respectfully submits that there is nothing in the facts of this case nor

in the Defendant's personal background and history which would lead to the just and

fair conclusion that a sentence of imprisonment of 10 to 16  months is reasonable.

Defendant will not belabor each factor nor repeat what is already before the Court in the

**Pre-Sentence Investigation Report**. A brief mention of the pertinent factors will

suffice.

1.    **Nature of the Offense**-  There is no evidence that the theft and attempted

use of the credit card by the Defendant was in any way premeditated, of long duration,

or resulted in serious monetary loss to the complainant, was one of many similar types

of conduct  by Ofc. Davis and there has been a direct expression of remorse to

**7**

victim immediately following the entry of the guilty plea herein.

  2.  **<u>History and Characteristics of the Defendant</u>**- Ofc. Davis' personal

history is described in detail at paragraphs 30 through 48 of the Pre-Sentence

Investigation Report.  He has no criminal history. He has a high school diploma

from Eastern Sr. High School. He is a lifelong resident of the District of Columbia

who comes from a close knit family. He has a seven month old daughter by his

significant other Latoya Hagins. He also assists with her two children from a prior

relationship one of whom suffers from epilepsy. Defendant attaches as exhibits 2 and

3 additional letters from his parents and aunt for the Court.

  3.  **<u>The Need for the Sentence to Promote Adequate Deterrence</u>**- This

factor has been well served by all of the ancillary consequences of the conviction

including the loss of career, pension, and earning capacity. Ofc. Davis faces financial

ruin, and constant embarrassment on any occasion he sees one of his former colleagues.

He must rebuild his life by finding a new career in order to support himself and his

immediate family unit. He has been seeking new employment and has several potential

employment opportunities that will likely be lost if he is incarcerated.

  **4.**  **<u>The Need to avoid Unwarranted Sentencing Disparities</u>**

  Defendant's conduct in this case represents a serious breach of his oath as a

a sworn law enforcement officer and warrants some type of punitive sanction, however

it falls short in terms of the egregiousness of the behavior of the " heartland" of  cases

brought under 18 U.S.C. § 1344, attempted bank fraud, where there is a broad

continuum of conduct that could subject a defendant to criminal liability. The specific

**8**

characteristics of this case make a sentence below the guideline sentence far more reasonable than the 10 to 16 month sentence that represents the guideline range or the split sentence recommended by the Government.

 **5.     The Need to Provide Restitution to the Victim**

There was no out of pocket loss suffered by the victim or the banking institution in question.
.

**IV     CONCLUSION**

For the foregoing reasons, Defendant respectfully submits that he should receive a downward departure or in the alternative a variance from the guideline sentence of 10 to 16 months incarceration to a six month period of home detention with supervised release for the maximum period allowed. This could be augmented by any punitive conditions the Court would want to impose including an extensive community service obligation.

This Defendant still would like an opportunity to repay the community for all the harm he has caused the victim, the community and the Metropolitan Police Department. The guideline sentence of 10 to 16 months imprisonment as calculated by United States Probation would be a waste of a person who could still be valuable asset to this community and would not be reasonable under Booker v. United States, 542 U.S. 220 (2005) and 18 U.S.C.§3553(a).

 Respectfully submitted,


 _____/s/_____

**9**

Harold D. Martin, # 368939
Robert Ades & Associates, P.C
1140 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C. 200036
(202)452-8080
email: hdmartin2@aol.com


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of January, 2008, I transmitted by first class mail and facsimile a copy of Defendant's Memorandum In Aid of Sentencing to:

Tejpal Singh Chawla, Esquire
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C. 20001


_____/s/_____
Harold D. Martin, # 368939

**10**

December 31, 2007

Dear Honorable Judge Friedman:

I am defendant, Donnay A. Davis, in which I stood before you pleading guilty to attempted bank fraud. I am writing this letter to explain my actions, as well as the circumstances behind the senseless and stupid act. I hope and pray that this letter allows you to see the person I really am.

I am a 25 year old product of the DC public school system as well as a survivor of the District's cold and harsh environment. Your Honor, all my life I have strived for excellence, whether it be in my personal life or my professional duties and responsibilities. I have been allowed opportunities through Eastern High School's Law and Legal Services Academy to converse with our former President, Bill Clinton, members of Congress, as well as other local contributors to our government. I have always been a scholar throughout my school years and I thought I had conquered it all— but temptation was greater than I could handle.

As you already know, on August 27, 2007, while on duty as a Metropolitan Police Officer I committed a spontaneous act of greed in time of need. I removed a credit card from a residence while securing the premises after the home alarm sounded in an attempt to obtain money. For as long as I shall be allowed to dwell on the face of this earth I will never forget the biggest mistake that I have ever made.

Two years ago I met my soul mate Latoya Haggins 28. I have also been blessed with her two children, Keith and Emani. Keith is a 10-year old boy who enjoys life every chance he gets. Keith has been dealt with a deck of cards that don't always work in his favor. At the age of 2 Keith was diagnosed with Epilepsy, a seizure disorder. This disease has affected his ability to learn at a normal pace and constantly keeps him in and out of the hospital. Latoya has devoted countless time and energy to see that Keith overcomes this disease. Emani is an 11 year old girl who excels beyond expectations and is very active in school and church and more than anything else she is a devoted student. Just recently we added a new addition to the family, baby Kennedy Davis was born to us April 28, 2007 and she inspires me to press on and not to give up despite the issue at hand.

I have always admired my parents, Donald and Maggie Davis, who have been married for 31 years. They have had to overcome many obstacles during their marriage. They have shown me how to provide for myself and have taught my brother and sister the same. They have always amazed me because they never failed to get the job done. My mother has been teaching for over 30 years here in the District and my father is a jack of all trades specializing in painting and home improvements. They raised me and my siblings at Emanuel Baptist Church because they knew how important it was for us to have a strong spiritual foundation. They made sure we

attended Sunday School and participated in youth activities. I still hold on to my spiritual faith and morals that were instilled by my parents.

Taking on this ready-made family has presented financial challenges as well as emotional challenges. I know that this responsibility is in my heart and I have accepted and embraced this family as my own. In May of 2007 I relocated the entire family to a safe environment in Capital Heights, MD. We live in a comfortable town home which we are renting and plan to buy in the future. While Latoya stayed at home with Kennedy I went to work in a dedicated effort to provide for my family to give Keith and Emani stability that Latoya may not have been able to provide on her own as a single mother. It was harder than I imagined. Your Honor, changes came quickly and in abundance. I went from being single and living at home, paying $300-500 a month rent to a family man paying $1,500 a month rent thinking I could do it all by myself. I am convinced that no one can do it all without help. There comes a time when we all must swallow our pride and ask for help – whether it be financial, spiritual or emotional. My responsibilities became overwhelming, knowing that the Holidays were fast approaching and my finances were drained at the time of this offense. Now I am worse off than I was prior to that regretful day at work. I risked so much for so little.

An opportunity for money presented itself and I fell into the trap. As an end result, I have lost my job, which has always been a dream and a goal of mine. My profession meant everything to me from the time I woke up in the morning to the time I went to bed at night. I was an officer with good work ethics and enjoyed every minute of it. The joy came when I could visually see the changes I was making in my city, in every day patrol and countless personal community efforts that were made by myself and partner. On many occasions I was called to represent top ranking officials at my District in their absence and I became well respected within the community where I worked and became one of the elite among my coworkers. My short 4 years with the Department was a milestone and I excelled at a fast pace. From awards and acknowledgements to the constant everyday gratification. It was a chapter in my life that came to an abrupt close by my actions. I constantly think about the what ifs and the whys but if I think too hard it slows my progression and it can hinder my devotion to my family's stability.

On the day I plead guilt I had the opportunity to speak to the victim. She was a woman of spiritual motivation and forgave me for my actions on that day. I asked that she not lose trust in the officers that follow. While speaking to her I expressed my shame and remorse for what took place that day. After speaking to the victim a huge burden was lifted.

Since that awful day I am pursuing a career with WMATA and things are looking very promising. My goal is to continue to provide for my children and to show I have a lot more to offer to society. I have spent many nights tossing and turning thinking about the outcome of this situation and the worse feeling I get is wondering how much of my first born daughters life I will miss if jail time is my fate. The thought of it sickens and depresses me deeply.

2

The support of my family and friends throughout the last couple of months has been remarkable and their love is not in vain. Your Honor, as my letter comes to a close I would like to thank you for taking the time to read this and I would like to apologize to my chief, Cathy Lanier, for putting her in an awkward situation when asked why. She should never have to explain criminal actions amongst her officers because it should not come to that point. I would like to apologize to family and friends who I have disappointed and let down in the blink of an eye. I apologize to my parents for they did not raise a criminal. They raised an intelligent young man who set his goals and standards high to become a productive, useful, self-surviving citizen.

If granted leniency by the Court, I will be a law abiding citizen. I have gone through a lot of mental pain, suffering, embarrassment, and most of all my life long dream is gone. I fulfilled it, but did not conquer it. I have definitely learned many valuable lessons through my mistake.

Sincerely,

Donnay A. Davis

12/31/2007  13:17 FAX 3015552581    POSTAL CONNECTION    ☑002

Ex 2.

4763 Madera Drive
Suitland, Md. 20746
12/27/07

To the Honorable Judge Friedman,

We are writing this letter in reference
to our son, Donnay A. Davis who has been charged
with attempted bank fraud. First of all, we want
you to know that in no way do we condone
his actions. We have always raised our three
children to be mindful of choices, risks, and
consequences in life. We really, truly believe
that Donnay acted spontaneously and hastily
when he was confronted with a credit card
in his sight. He didn't think the act through,
and seemingly for a period of time, forgot
his instilled morals, values, and principles.

Donnay acted truly out of character when
he committed this act. Since this nightmare
has taken place, we have observed that
he is very remorseful about what he did.
His pain and our disappointment cannot

be put into words.

Lonnay has always been very focused in school as well as his career with M.P.D. He displayed a lot of pride in his work, has received numerous awards and accomodations, and strived to do the right things, on and off the job. Temptation ruined his career.

We believe that Lonnay has learned a lesson that he will never forget. He will take this experience and use it to better himself as a citizen, a father, and a son. Sometimes we can take a negative circumstance and turn it into a positive circumstance for our betterment. Hopefully, he can help other young people in the community to stop them from making the same kind of mistake or any other mistakes.

If granted freedom, we know that he will strive to live a more fruitful life, doing things as they should be done in society, and most of all obeying the law.

Tommy has resigned his position, and is seeking employment elsewhere to provide for his family. He is a young man with much character, but still has to gain more knowledge and wisdom as he continues his journey in life.

He, as well as our family (extended) . . . . . have prayed together, and especially for Tommy, that he will be granted leniency, live as an upright citizen, and live righteously as God would have him to live.

Sincerely,
Donald and Margaret Lewis

December 31, 2007

Dear Honorable Judge Friedman:

My name is Sharon Y. Taylor and I am the Aunt of Donnay A. Davis. I would just like to express my thoughts to you on the character of my nephew.

Donnay lived in my home from the time he was 14 years old until a year ago. Donnay has always wanted to be a police officer as far back as the age of 6. What Donnay has allegedly done is so much out of his character. I believe that he was just so much overwhelmed with taking on the responsibility of a new home, a new baby, a Fiancé with two children (ages 10 and 8) that he may have lost control of his senses for a minute.

Donnay has always been an upright young man. He carries himself well, dresses well, and speaks intelligently. He is a responsible, caring and giving young man. I know that Donnay is hurting inside for allegedly betraying what he has made an oath to uphold. There are times in our lives that we have done something wrong that turns everything we have lived and worked for upside down. This is the time in Donnay's life that if that clock could be turned back his character would not even allow him to do anything to upset his livelihood and his responsibility to his family and himself. I know that Donnay can and will be an upright citizen. I know that he is so very much sorry for what he has allegedly done. I know that he will raise his children to be positive people in this world. I know that he will provide the home and security for his family – if only the court gives him some leniency upon his appearance. Please see Donnay as a positive young man who from this day forward will try to make a difference in his life because he is really one of the **good ones** out here in this crazy world.

We, as a family, love Donnay and will be behind him 100 per cent in the outcome of this horrible mistake that he has allegedly made. We hope the court will pass judgment with their eyes wide open and see Donnay for the good young man that he is.

Thank you for your attention to this matter.

Sincerely,

Sharon Y. Taylor

DC1 1139356v1